BYRON REED COMPANY, INC., A CORPORATION, APPELLANT, v. MAJERS MARKET RESEARCH COMPANY, INC., A CORPORATION, ET AL., APPELLEES.

266 N. W. 2d 213

Filed May 31, 1978. No. 41402.

A. J. Whalen, for appellant.

James T. Gleason of Collins & Gleason, for appellees.

Heard before WHITE, C. J., BOSLAUGH, and WHITE, JJ., and WARREN and KORTUM, District Judges.

KORTUM, District Judge.

Byron Reed Company, Inc., plaintiff and appel-

lant, brought this action in the municipal court of the City of Omaha seeking to recover a real estate commission for selling certain property owned by defendants William and Maria Harless. After trial the municipal court entered a judgment for the plaintiff and against both defendants, the Harlesses and Majers Market Research Company, Inc. On appeal to the District Court after trial de novo on the record, the District Court reversed the judgment of the lower court and entered a judgment for the defendants.

On December 1, 1973, the defendants William and Maria Harless entered into a real estate listing contract with the plaintiff. The contract gave the plaintiff the exclusive right to sell the Harless home until April 1, 1974, and provided for the payment of a 7 percent selling commission. The listing contract further provided that if, within 6 months after the expiration of the listing, a sale of the premises was made to anyone due to plaintiff's efforts or advertising, then the commission would likewise be due.

On March 13, 1974, the plaintiff obtained a written offer from Jack and Louise Koberg to purchase the property. This offer was submitted to one defendant, Harless, who informed the plaintiff that the matter was out of his hands; that plaintiff was to contact Majers Market Research Company, Inc., who had written authority to set the selling price for Harless. Mr. Harless was an employee of defendant Majers and Harless had been guaranteed an agreeable price for his home. Defendant Majers rejected the offer and plaintiff thereupon returned the offer and deposit to the Kobergs.

After the expiration of the listing agreement, defendant Majers spent $3,978.16 in cleaning up and improving the property for sale. After April 1, 1974, the Byron Reed sign was taken off the property and a sign stating "for sale by owner" was put up. This sign carried the telephone number of the defendant, Majers.

In April 1974, the Kobergs noticed the change in signs on the property and contacted Majers. They were shown through the house by Mr. Scribante, president of Majers. Mr. Koberg testified that on that showing in April he told Scribante he had previously made an offer for the house in March through the plaintiff, Byron Reed Company, Inc.

By deed of May 1, 1974, the Harlesses sold the house to the Kobergs. The purchase price was lower than the original listing price of Byron Reed Company, Inc., and some $2,000 higher than the offer made by Koberg through Byron Reed Company, Inc., in March.

The defendants contend that the action deals with two different premises, although they acknowledge that the legal description is the same. This contention is based on the fact that after the expiration of the listing agreement, but before the 6-month period thereafter had passed, the defendants expended considerable time and money cleaning and restoring the property in question.

The cases cited by defendants do not support this contention. We do not think the evidence supports such a position. The cleanup work, no doubt, made the premises more saleable. However, to change the very definition of the subject matter of the contract, much more is needed than simply cleaning and restoring the premises.

Defendants further contend that the price difference between the original listing agreement and what the premises actually sold for changes the terms of the contract sufficiently to defeat plaintiff's claim. The original listing price was $50,950. This was later reduced to $48,950 by agreement among all the defendants and was communicated to the plaintiff. The plaintiff obtained a written offer from the Kobergs of $45,000 on March 13, 1974. On May 1, 1974, the property was sold to the Kobergs for $47,700. We think the facts differ from those in the

case of Huston Co. v. Mooney, 190 Neb. 242, 207 N. W. 2d 525, cited by the defendants. In that case the contract called for the purchase price to be paid in cash or upon other terms acceptable to the seller. The prospective buyer made an offer to purchase the property with a $1,000 downpayment on January 1st and the balance to be spread out over an approximately 18-month period. The evidence was conflicting as to whether or not the seller was agreeable to such terms. The property was sold 3 months after the expiration of the listing agreement for $20,000 cash, plus abstracting costs, to the same party with whom the plaintiff had been negotiating. The trial court specifically found that the plaintiff had at no time found a buyer for $20,000 cash, as set forth in the original listing agreement, and that the plaintiff had failed to procure a purchaser within the terms of the agreement. The District Court held for the seller and the judgment was affirmed by this court. Huston Co. v. Mooney, *supra*.

The Huston case is distinguishable on its facts and is not controlling in the matter.

The plaintiff contends that the District Court erred in reversing the judgment of the municipal court and that the judgment is contrary to law and the evidence.

The chief thrust of plaintiff's appeal is that the contract is valid, that there was a sale within the time span of the listing agreement on substantially the same terms as in the listing agreement, and that such sale was made because of the advertising and efforts of the plaintiff in the original listing.

The basic validity of such terminology in a real estate listing contract has been recently stated by this court in the case of Dial Realty, Inc. v. Cudahy Co., 198 Neb. 641, 254 N. W. 2d 421. Although primarily directed at determining whether a sale had occurred and what the price was, the court at page 643 stated: "However, even if the defendant had not admitted

its liability, under the plain and unambiguous terms of the listing agreement, the defendant was clearly liable to the plaintiff. By the following terms of the listing agreement, the defendant obligated itself to pay the plaintiff the stated commission: 'If a sale is made, or a purchaser found, who is ready, willing and able to purchase the property before the expiration of this listing, by you, myself, or any other person, at the above price and terms or for any other price and terms I may agree to accept, or if this agreement is revoked or violated by me * * *.' ''

We think that language is applicable here and that the listing agreement is valid even though the sale, in this instance, occurred after expiration of the listing period, but within the 6-months extension of time thereafter.

The major determination to be made, however, is whether the terms of the ultimate sale are substantially the same as in the listing agreement and whether such sale occurred as a result of the efforts or advertising of the plaintiff under the listing.

There appears to be no dispute that the property was ultimately sold to the Kobergs, the same persons who had inspected the premises with a representative of the plaintiff. It is also undisputed that the Kobergs had made an offer in writing to purchase the property while the listing agreement was in effect.

We think the facts established clearly that the sale of the premises was primarily due to the efforts of the plaintiff in advertising and showing the property to the Kobergs. We find the sale was made on substantially the same terms as had been offered through the efforts of the plaintiff.

Where a real estate broker, while his brokerage contract is in full force and effect, obtains a purchaser for real estate and no sale is made during the existence of the agreement but sale is made thereafter by the owner to the person produced by the

agent, on substantially the terms that had been offered through the agent's efforts, the broker is entitled to a commission for making the sale. Peters v. Dreger, 146 Neb. 670, 21 N. W. 2d 436.

For these reasons we find that the District Court erred in reversing the judgment of the municipal court.

The judgment of the District Court is reversed and the judgment of the municipal court of the City of Omaha, in favor of the plaintiff and against the defendants, is reinstated.

REVERSED.